[No. 39308.    Department One.    May 16, 1968.]

OWEN F. KOLLER, *Appellant*, v. LEE M. FLERCHINGER *et al.*, *Respondents.**

*S. Dean Arnold*, for appellant.

*Keith O. Yates*, for respondents.

BRADFORD, J.†—On September 10, 1963, defendants (respondents), Lee and Peggy Flerchinger, desiring to dispose of their ranch property and some land belonging to Lee's parents, listed the properties for sale with a real-estate agency in Spokane. Owen F. Koller, plaintiff (appellant), was employed as a salesman for the agency and showed the property to two prospective purchasers without success. Defendants' land constituted approximately one-third of the property listed, and the other two-thirds was owned by Lee Flerchinger's parents.

After the listing had expired, the plaintiff received his real-estate license, went into business for himself and continued to seek a buyer without the knowledge or authorization of the defendants. In the spring of 1964, plaintiff con-

*Reported in 441 P.2d 126.

†Judge Bradford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

tacted Ralph Watson, a neighbor of the defendants, and told him he had a listing on the property. Mr. Watson made an offer of purchase for $150,000. Plaintiff then, on May 23, 1964, telephoned Lee Flerchinger and asked him if the properties were still for sale, told him he had a purchaser and requested a meeting to discuss the terms of the proposed sale. The parties met that same evening, and, after discussing the transaction, plaintiff obtained the signatures of the defendants on an earnest money agreement and an agreement to pay plaintiff a $7,000 commission which was attached to the earnest money agreement. The earnest money agreement provided that it would "not bind the seller unless accepted at or before 12 noon on the 26 day of May, 1964." The agreement was not to be binding until all necessary signatures were procured.

Plaintiff failed to procure the signatures of Watson or the elder Flerchingers. On June 11, 1964, Watson approached the Flerchingers and arranged a meeting with them in a lawyer's office for June 15th, at which time an agreement was reached and a sale consummated. Upon learning of the sale, plaintiff requested his commission, defendants refused to pay, and this action followed. After trial to the court, the complaint was dismissed with prejudice. Plaintiff's assignments of error relate to the issue of whether the trial court correctly found no commission to be due on the sale.

The agreement to pay a commission was printed at the bottom of the earnest money agreement and read in part: "I agree to pay forthwith to Owen F. Koller as a broker a commission of $7,000.00 and upon the closing or specific enforcement of *this transaction* . . . ." (Italics ours.) The words "this transaction" can only refer to the one contained in the earnest money agreement.

When the plaintiff presented the earnest money agreement to the defendants for their signatures on the evening of May 23d, the stated purchase price was $150,000. The defendants refused to accept, and this figure was raised to $155,000. Defendants also required plaintiff to insert a provision whereby the sellers were to retain the hay crop, and

the buildings and pasture for their cow herd until October 1, 1964.

After defendants had signed the earnest money agreement, the plaintiff, without the knowledge or consent of the defendants, blue-penciled that portion of the agreement reading: "The sellers shall have the hay crop on the Anatone ranch and pasture for present cow herd until Oct. 1, 1964 . . . ."

■ These changes constituted offers and counteroffers. The parties were still negotiating and there was never a meeting of the minds. *Owens-Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co.,* 56 Wn.2d 167, 351 P.2d 516 (1960). An acceptance of an offer must be identical with the offer, or there can be no consummation of a contract. 1A Corbin, Contracts § 82 (1963); *Blue Mountain Constr. Co. v. Grant Cy. School Dist. No. 150-204,* 49 Wn.2d 685, 306 P.2d 209 (1957); *Owens-Corning Fiberglas Corp. v. Fox Smith Sheet Metal Co., supra.*

■ The earnest money agreement contained this provision: "This agreement does not bind the seller unless accepted at or before 12 noon on the 26 day of May, 1964." In *Brackett v. Schafer,* 41 Wn.2d 828, 832, 252 P.2d 294 (1953), this court said:

> It is a general rule of universal application that a broker employed for a definite time to effect a sale of property must negotiate the sale within the time fixed to be entitled to his commission. *Kane v. Dawson,* 52 Wash. 411, 100 Pac. 837; *Swift v. Starrett,* 117 Wash. 188, 200 Pac. 1108; *Pavey v. Collins,* 31 Wn. (2d) 864, 199 P. (2d) 571.

There is an exception to this rule when the failure to comply is due to the fraud or fault of the owner. In this case, there is no evidence that would bring it within the exception. Plaintiff drew up the contract to provide for the May 26 termination date. He failed to perform within the time agreed upon, and therefore, no binding contractual relationship was ever effectuated.

Plaintiff testified during trial, and conceded in his oral argument before this court, that the defendants were told

the earnest money agreement would not be binding or legal unless plaintiff obtained the signatures of the purchaser and the elder Flerchingers.

Procurement of these signatures was clearly a condition precedent which must be fulfilled before defendants would be bound by the agreement to pay a commission. In *Ross v. Harding*, 64 Wn.2d 231, 236, 391 P.2d 526 (1964), we said:

> "Conditions precedent" are those facts and events, occurring subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available. 3A Corbin, Contracts § 628, p. 16; *Partlow v. Mathews*, 43 Wn. (2d) 398, 261 P. (2d) 394.

Whether a condition is one which a nonfulfillment excuses performance, depends upon the intent of the parties and is to be determined from a fair and reasonable consideration of all the surrounding circumstances. 5 Williston, Contracts § 663, at 127 (3d ed. 1961).

There being no valid contract between the plaintiff and the defendants at the time the sale to Watson was made, the statute of frauds bars recovery by the plaintiff. RCW 19.36.010(5).

Plaintiff seems to contend that because the property was later sold by defendants to Watson, defendants waived all conditions precedent not performed by plaintiff, and acceptance of the changes plaintiff made in the earnest money agreement without defendants' knowledge. We find no evidence of waiver in the record. Defendants were ignorant of the changes made in the agreement until the time of this suit. The record demonstrates that after May 26th, all parties treated the agreement as terminated. Plaintiff approached the defendants, prepared the contract, and agreed to procure a buyer within the allotted time. Protection of his interests against subsequent sales could have been provided for in the contract.

The other assignments of error made by the plaintiff relate to disputed questions of fact. There is substantial evidence in the record to support the findings of the trial

court. *Hinz v. Lieser*, 52 Wn.2d 205, 324 P.2d 829 (1958); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The court correctly dismissed plaintiff's action with prejudice and assessed the costs against him.

The judgment is affirmed.

FINLEY, C. J., ROSELLINI, HALE, and McGOVERN, JJ., concur.