# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| U.S. BANK NATIONAL ASSOCIATION AS LEGAL TITLE TRUSTEE FOR TRUMAN 2016 SC6 TITLE TRUST, its successors in interest and/or assigns,<br><br>     Respondents,<br><br>  v.<br><br>TARMO PAUL ROOSILD; SAMANTHA CASTRONOVO; OCCUPANTS OF THE PREMISES,<br><br>     Appellants. | No. 53772-9-II<br><br><br><br>PUBLISHED OPINION |

GLASGOW, J.—Samantha Castronovo and Tarmo Paul Roosild borrowed $227,000, signed a promissory note payable to Bank of America, N.A., and secured the note with a deed of trust encumbering their house and property in Poulsbo, Washington. The deed of trust required the lender to provide notice of default, notice of intent to accelerate the loan, and an opportunity to cure prior to starting foreclosure.

Castronovo and Roosild stopped making payments. In 2015, they received a notice of default and intent to accelerate from a loan servicer stating it was acting on behalf of a new lender, Christiana Trust. Castronovo and Roosild failed to cure their default. In 2017, U.S. Bank National Association, which then held the note and the deed of trust, started judicial foreclosure.

Castronovo[1] appeals the trial court's order granting summary judgment to U.S. Bank, contending that the preforeclosure notice requirements in the deed of trust were conditions precedent to foreclosure and notice could only be sent by the then-current lender. Castronovo asserts that an issue of material fact exists about whether Christiana Trust was the lender in 2015 when the notice was sent. Castronovo alleges no other defect in the preforeclosure notice.

We conclude that the notice requirements in the deed of trust were conditions precedent to foreclosure, but we decline to apply the strict compliance that Castronovo's argument demands. The notice of default and intent to accelerate contained the required substantive notices and identified the party with authority to work out the loan. The notice sufficiently satisfied the deed of trust requirements, regardless of whether Christiana Trust was the lender in 2015 when the notice was sent.

We affirm the summary judgment order. We also award attorney fees on appeal to U.S. Bank with the amount to be determined by a commissioner of this court.

FACTS

Castronovo and Roosild purchased a home in Poulsbo in 1993. In 2006, they borrowed $227,000 from Bank of America and signed a promissory note for that amount payable to Bank of America, which was designated the "lender" and "note holder." Clerk's Papers (CP) at 13. Castronovo and Roosild were required to make monthly payments. The note provided that anyone who took the note by transfer and was entitled to receive payments under it would be the note holder.

---

[1] Roosild died in 2019 but remains a named appellant. Unless noted otherwise, we refer to the appellants collectively as Castronovo.

The promissory note was secured by a deed of trust executed and recorded the same day. The deed of trust encumbered the Poulsbo property. The deed of trust defined the "lender" as "the beneficiary under this Security Instrument" and named Bank of America as the lender. CP at 17.

Section 20 of the deed of trust described the conditions under which the borrower or lender could initiate judicial action:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action . . . pursuant to this Security Instrument . . . until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

CP at 27. Section 20 also provided that "[t]he notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 . . . shall . . . satisfy the notice and opportunity to take corrective action provisions of this Section 20." CP at 27.[2]

Section 22 addressed the procedure for notice and acceleration if the borrower defaulted. The notice was to specify:

> (a) [T]he default; (b) the action required to cure the default; (c) a date . . . by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration . . . and sale of the Property . . . . The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law.

CP at 28. Both the note and the deed of trust contained provisions authorizing the lender to recover attorney fees.

---

[2] Acceleration of a loan makes the entire amount due immediately.

In December 2006, Bank of America determined that the original note had been lost or destroyed and it executed a lost note affidavit and provided a copy of the note.[3]

Castronovo and Roosild moved away from their Poulsbo home and began renting it. They encountered financial hardships and attempted unsuccessfully to apply for loan modification from Bank of America's loan servicer. They stopped making loan payments in January 2012.

U.S. Bank states in its brief that Bank of America transferred its interest in the note to a different lender, Christiana Trust, at some point before May 2015. In May 2015, Castronovo received a letter from BSI Financial Services, a loan servicer. BSI stated that it was acting "on behalf of Christiana Trust." CP at 94. The letter referenced the loan number and stated that the loan was in default because Castronovo had missed 40 monthly payments and owed $75,420.69.

The default letter provided that Castronovo had five weeks to cure the default by paying the amount owed. Absent a cure, Christiana Trust would accelerate the loan to collect the full amount due and start foreclosure. The letter instructed Castronovo to contact BSI's loss mitigation department with any questions and provided a phone number. The letter stated that if the borrowers sent a written request to BSI within 30 days of receiving the default notice, BSI would "provide . . . the name and address of the original creditor, if . . . different from the current creditor." CP at 95.

Castronovo sent a timely written request to BSI's loss mitigation department requesting an in-person meeting with a representative and "verification of any financial obligation to BSI and/or

---

[3] The parties relied on the lost note affidavit and copy of the note in the proceedings below. Castronovo does not challenge reliance on these documents.

Christiana [T]rust." CP at 121. Castronovo then hired a lawyer, who sent another letter to BSI requesting documentation of the alleged debt.

In September 2015, BSI responded that the "owner or assignee" of the loan was Christiana Trust and said it would provide additional information after further research. CP at 125. Castronovo did not cure the default.

In 2016, Bank of America assigned the deed of trust to Christiana Trust and the assignment was recorded. In November 2016, Christiana Trust then assigned the deed of trust to U.S. Bank and that assignment was recorded.

In 2017, U.S. Bank filed a summons and complaint in Kitsap County Superior Court initiating judicial foreclosure. U.S. Bank attached the lost note affidavit and a copy of the note to the complaint. Although U.S. Bank had obtained these documents by 2017, the record contains no evidence of when the note was transferred from Bank of America to Christiana Trust or from Christiana Trust to U.S. Bank.

In April 2019, U.S. Bank moved for summary judgment. U.S. Bank supported its motion with an affidavit describing the successive assignments of the deed of trust. The affidavit stated, "The Deed of Trust was assigned to Christi[a]na Trust . . . [and] recorded . . . on June 10, 2016." CP at 54.

Castronovo opposed the motion for summary judgment. She argued that the default notice was defective because there was no evidence that Christiana Trust had an interest in the loan in May 2015 when the notice was sent, so the notice was not sent by the lender as required by the preforeclosure notice requirements in section 22 of the deed of trust. Castronovo asserted that this

5

constituted a failure to meet a condition precedent and claimed this precluded foreclosure and meant U.S. Bank was not entitled to summary judgment as a matter of law.

The trial court concluded that no material facts were in dispute and granted U.S. Bank's motion for summary judgment. The trial court reasoned that section 22 applied only to nonjudicial foreclosures. The trial court explained, "Defendants have not established that a judicial foreclosure requires pre-foreclosure notice procedures." CP at 137.

Castronovo appeals the trial court's order granting summary judgment to U.S. Bank.

ANALYSIS

A deed of trust can be foreclosed in a nonjudicial foreclosure under RCW 61.24.040 or in a judicial foreclosure under RCW 61.12.040. *See Deutsche Bank Nat'l Tr. Co. v. Slotke*, 192 Wn. App. 166, 171 n.8, 367 P.3d 600 (2016); *see also* RCW 61.24.100(8). A judicial foreclosure is commenced by filing an action in superior court. *Slotke*, 192 Wn. App. at 171; *see also* RCW 61.12.040. Because a deed of trust is a kind of mortgage, a deed of trust foreclosed judicially is subject to laws applicable to mortgages. *Boeing Emps. Credit Union v. Burns*, 167 Wn. App. 265, 272, 272 P.3d 908 (2012).[4]

A. Summary Judgment Burden and Standard of Review

In reviewing a summary judgment decision, we apply the same standard as the trial court. *Mackey v. Home Depot USA, Inc.*, 12 Wn. App. 2d 557, 569, 459 P.3d 371, *review denied*, 195 Wn.2d 1031 (2020). We review all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c).

---

[4] U.S. Bank did not attempt nonjudicial foreclosure.

We consider only evidence brought to the trial court's attention, we review the trial court's conclusions of law de novo, and we may affirm on any basis supported by the record. *Bavand v. OneWest Bank, FSB*, 196 Wn. App. 813, 825, 385 P.3d 233 (2016); RAP 9.12.

"The moving party bears the initial burden of showing that there is no genuine issue of material fact," and "can meet this burden by showing that there is an absence of evidence to support the [other party's] case." *Lee v. Metro Parks Tacoma*, 183 Wn. App. 961, 964, 335 P.3d 1014 (2014). "Once the moving party has made such a showing, the burden shifts to the nonmoving party to set forth specific facts that rebut the moving party's contentions and show a genuine issue of material fact." *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 183, 401 P.3d 468 (2017). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015).

B.      Preforeclosure Notice Provisions

Castronovo acknowledges that chapter 61.24 RCW, which requires specific statutory preforeclosure notices in nonjudicial foreclosures, does not apply to judicial foreclosures. But she argues that "the terms of the documents control" and section 22 of the deed of trust created notice requirements that were independent conditions precedent to foreclosure. Br. of Appellant at 12. These conditions precedent in the deed of trust stated that the lender was to send notice. Castronovo argues that because U.S. Bank failed to establish that Christiana Trust was the lender in May 2015 when BSI sent the default notice, the May 2015 notice was defective because it was not sent by the proper party. Castronovo contends that U.S. Bank was therefore not entitled to summary judgment as a matter of law.

7

We hold that regardless of whether Christiana Trust held the note in May 2015, the notice Castronovo received substantially complied with the conditions precedent in the deed of trust and, as a result, U.S. Bank was entitled to foreclose.

1.     Preforeclosure notice requirements arising from the deed of trust

Under RCW 61.12.040, a lender may initiate a judicial foreclosure simply by filing a summons and complaint in the superior court where the property is located and serving the borrower. *Slotke*, 192 Wn. App. at 171. However, under RCW 61.12.020, which applies to the terms of a deed of trust when foreclosed as a mortgage, "The parties may insert in such mortgage any lawful agreement or condition." *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 105, 285 P.3d 34 (2012); *see also Burns*, 167 Wn. App. at 272.

We rely on general contract law principles to interpret provisions in a deed of trust. *See Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 718, 446 P.3d 683 (2019), *review denied*, 195 Wn.2d 1004 (2020); *see also 4518 S. 256th, LLC v. Karen L. Gibbon, P.S.*, 195 Wn. App. 423, 442, 382 P.3d 1 (2016). We review contract interpretation de novo where, as here, extrinsic evidence is unnecessary for interpretation. *See Kelley v. Tonda*, 198 Wn. App. 303, 312-13, 393 P.3d 824 (2017).

Here, section 20 of the deed of trust stated that prior to commencing "any judicial action" pursuant to the deed of trust, the lender was required to provide certain notice to the borrower, including the notice required in section 22. CP at 27. Section 22 provided that if the borrower defaulted and the lender wanted to accelerate the debt, the lender was required to first send the borrower a notice containing specific information, warnings, and statements of the borrower's legal rights and to give the borrower an opportunity to cure their default.

We reject U.S. Bank's contention that section 22 only applies to nonjudicial foreclosures because some of its provisions "only make sense in the context of a non-judicial foreclosure." Br. of Resp't at 13. Even if some portions of section 22 applied only to nonjudicial foreclosures, the plain language of section 20 designates the preacceleration notice provisions of section 22 conditions precedent to "*any* judicial action" under the deed of trust. CP at 27 (emphasis added).[5]

We hold that the preforeclosure notice requirements of sections 20 and 22 applied to U.S. Bank's judicial foreclosure.

2.      Preforeclosure notice provisions as conditions precedent

A condition precedent is an event that must occur before there is a right to immediate performance of a contract. *Tacoma Northpark, LLC v. NW, LLC*, 123 Wn. App. 73, 79, 96 P.3d 454 (2004). If the condition does not occur, the parties are excused from performance. *Id*. Whether a contract provision is a condition precedent or a contractual promise depends on the intent of the parties, to be determined from a fair and reasonable construction of the language used in light of all the surrounding circumstances. *Lokan & Assocs., Inc. v. Am. Beef Processing, LLC*, 177 Wn. App. 490, 499, 311 P.3d 1285 (2013). "[W]ords such as 'provided that,' 'on condition,' 'when,' 'so that,' 'while,' 'as soon as,' and 'after' suggest a conditional intent, not a promise." *Tacoma*

---

[5] In granting summary judgment in favor of U.S. Bank, the trial court relied on RCW 61.12.040 and *Glassmaker v. Ricard*, 23 Wn. App. 35, 38, 593 P.2d 179 (1979) to conclude that section 22 did not apply to the notice to accelerate in this case because U.S. Bank filed and served a complaint in superior court initiating judicial foreclosure. But *Glassmaker* is not dispositive here. The *Glassmaker* court explained that the filing and service of a complaint could be sufficient to provide notice that the lender was accelerating the entire debt due on a promissory note. *Id.* at 37-38. *Glassmaker* addressed whether simply filing, rather than filing and serving, a summons and complaint on the defendants constituted actual notice of acceleration. *Id.* at 38. *Glassmaker* did not, however, address whether any of the loan documents in that case contained terms requiring particular notice to the borrower. Thus, *Glassmaker* did not resolve the issue presented here.

*Northpark*, 123 Wn. App. at 80 (quoting *Jones Assocs., Inc. v. Eastside Props., Inc.*, 41 Wn. App. 462, 467, 704 P.2d 681 (1985)). The terms "subject to" and "contingent upon" likewise demonstrate an intent to form a condition precedent. *Id*.

Sections 20 and 22 created conditions precedent to foreclosure under the deed of trust. Section 20 stated that "[n]either Borrower nor Lender may commence . . . any judicial action . . . pursuant to this Security Instrument . . . *until* such Borrower or Lender has notified the other party" of the breach and given the other party an opportunity to respond and cure. CP at 27 (emphasis added). The borrower had to receive notice of default, intent to accelerate, and an opportunity to cure as provided in section 22. The word "until" in section 20 "suggest[s] a conditional intent." *Tacoma Northpark*, 123 Wn. App. at 80. Likewise, section 22 provides that the "Lender *shall* give notice to Borrower *prior to* acceleration," which conditions acceleration on the lender first giving notice. CP at 28 (emphasis added); *Tacoma Northpark*, 123 Wn. App. at 79-80.

### 3. Satisfaction of the material conditions precedent

Castronovo raises only one deficiency with the notice provided. She claims that it was not sent by the lender. Castronovo otherwise alleges no deficiency in the form or content of the notice provided.

Neither party directly discusses whether substantial compliance with a condition precedent in a deed of trust is sufficient under Washington law or whether U.S. Bank substantially complied with the material conditions precedent here. This issue has not been resolved by Washington courts. Because we may affirm the trial court on any grounds supported by the record, we take this opportunity to address whether the doctrine of substantial performance applies to a lender's compliance with a condition precedent arising from a deed of trust. *Bavand*, 196 Wn. App. at 825.

> a.     Substantial compliance prior to judicial foreclosure

Washington courts have avoided hypertechnical applications of notice requirements in prior cases. We have previously held that conditions precedent can "be excused if enforcement would involve extreme forfeiture or penalty and if the condition does not form an essential part of the bargain." *Ashburn v. Safeco Ins. Co. of Am.*, 42 Wn. App. 692, 698, 713 P.2d 742 (1986). And in *Walter Implement, Inc. v. Focht*, the Washington Supreme Court considered what conduct was sufficient to comply with a condition precedent requiring notice. 107 Wn.2d 553, 555-56, 730 P.2d 1340 (1987). There, the lessor of farm equipment sought a deficiency judgment from a defaulting lessee under a contract that required the lessor to give notice of its intent to resell the equipment and seek a deficiency judgment. *Id.* at 555. The court held that the notice requirement was a condition precedent to seeking a deficiency judgment but rejected Division Three's conclusion that "notice" could only be satisfied by a written notice of the time, place, and manner of the sale. *Id.* at 556. The Supreme Court held that the condition precedent "was met here by Walter Implement informing Focht that Walter Implement would attempt to resell the equipment." *Id.* at 557.

Other jurisdictions have concluded that substantial compliance with section 22 (a standard deed of trust provision) satisfies deed of trust terms that constitute conditions precedent to *judicial* foreclosure. In *Green Tree Servicing, LLC v. Milam*, the Florida Court of Appeal addressed the sufficiency of a lender's notice of default pursuant to section 22 in the deed of trust nearly identical to the section 22 here. 177 So. 3d 7, 12-13 (Fla. Dist. Ct. App. 2015). The Florida court determined that default notice requirements in the deed of trust were satisfied where the lender substantially complied. *Id.* at 13. The court reasoned, "[W]hen the content of a lender's notice letter is nearly

equivalent to or varies in only immaterial respects from what the mortgage requires, the letter substantially complies, and a minor variation from the terms of paragraph [22] should not preclude a foreclosure action." *Id.* at 14-15.

The *Green Tree* court further explained, "Paragraph [22] is designed to ensure that a borrower receives essential information concerning [their] default, how to cure it, and [their] rights with respect to it." *Id.* at 19. The court concluded that paragraph 22 "is not a technical trap designed to forestall a lender from prosecuting an otherwise proper foreclosure action because a borrower, after the fact, decides that the letter might have been better worded." *Id.* In *Green Tree*, the borrowers "derived from [the lender's] letter precisely the understanding paragraph [22] contemplates," evidenced by the fact that "after receiving the foreclosure complaint, they attempted to negotiate a modification and, thereafter, retained counsel and defended the action vigorously." *Id.* at 17. Since there was no evidence that the default notice failed to contain the essential information needed to inform the borrowers of their responsibilities and rights, the court concluded that even if the language in the letter varied in some technical respects from the description in the conditions precedent, the lender was still entitled to pursue foreclosure. *Id.* at 19.

Other jurisdictions have reached similar conclusions. In *Reese v. Provident Funding Associates*, 327 Ga. App. 266, 268, 758 S.E.2d 329 (2014), the Georgia Court of Appeals held, "Contrary to the [borrowers'] argument, the written notice . . . was sufficient because it substantially complied with the acceleration and remedies provision in the Security Deed," noting the "general rule with respect to compliance with contract terms is substantial compliance, not strict compliance." In *Fidelity Bank v. Krenisky*, 72 Conn. App. 700, 714, 807 A.2d 968 (2002), the Connecticut Court of Appeals held, "Though exact compliance with the notice requirement in

the mortgage would have avoided any question as to the sufficiency of the notice of default, . . . the notice of default substantially complied with the relevant notice provision."

Finally, substantial compliance with a condition precedent is analogous to a nonmaterial breach of a contractual obligation. Washington law clearly provides that "if it is determined that a breach is material, or goes to the root or essence of the contract, it follows that substantial performance has not been rendered, and further performance by the other party is excused." *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 220, 317 P.3d 543 (2014). "Only a breach or nonperformance of a promise by one party to a bilateral contract so material as to justify a refusal of the other party to perform a contractual duty, discharges that duty." *Id.* Accordingly, "A nonmaterial or cured breach will not excuse a party's failure to perform." *Lake Hills Invs. LLC v. Rushforth Constr. Co.*, 14 Wn. App. 2d 617, 637, 472 P.3d 337 (2020), *review granted*, 196 Wn.2d 1042 (2021). Allowing substantial compliance with a condition precedent is consistent with these principles.

     b.   The alleged defect in the notice was immaterial

The material conditions precedent in sections 20 and 22 were satisfied. Section 22 required the notice of default to contain the following: a description of (1) the nature of the default, (2) what action the borrower could take to cure the default, (3) the date (at least 30 days from when notice was sent) by which the borrower had to cure the default, (4) a statement informing the borrower that failure to cure could result in acceleration of the entire amount due, (5) a statement informing the borrower of their "right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law." CP at 28.

The parties do not dispute that BSI's (the loan servicer's) letter to Castronovo addressed each of the five items in section 22. *See* CP at 94-95. It was clearly labelled notice of default and intent to accelerate and identified the nature of the default as missed monthly payments. The letter informed Castronovo that she and Roosild could cure the default by paying $75,420.69, the entire amount due. The letter further notified Castronovo that they had until June 11, 2015, to cure (more than 30 days). The letter gave the required acceleration warning by stating, "Failure to cure the default on or before this date may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding where applicable, and sale of the property." CP at 94. And the letter met section 22's requirement that it describe the borrower's legal rights, stating,

> You have the right to reinstate the loan after acceleration and the right to assert in the foreclosure proceeding, or to bring a court action to assert, the non-existence of a default or any other defense you may have to acceleration and sale. Failure to respond to this letter may result in the loss of your property.

CP at 95.

We do not agree with Castronovo's claim that strict compliance with the condition precedent was necessary here to ensure she and Roosild knew how to contact the correct lender. The letter referred Castronovo to the loan servicer, BSI, and explained that BSI had authority to work out the loan. Following instructions in the default letter, Castronovo obtained counsel, requested additional information about the relationship to Christiana Trust, and received a letter from BSI confirming that Christiana Trust held the loan and indicating it would provide additional documentation in a subsequent letter. Castronovo has not provided any evidence that BSI was not the proper loan servicer. And although Castronovo claims she and Roosild were harmed because BSI "would never engage with us regarding our [loan] modification application," CP at 119, the claim ignores the fact that they were in default because Castronovo and Roosild had not made any

14

payments in over three years and the other requests for loan modification had not been approved. Castronovo presents no facts establishing that Christiana Trust would have responded differently to a request for loan modification. Even assuming a different party should have been identified as the lender in the notice letter, Castronovo has not shown that this materially affected her rights as a borrower.

Regardless of whether Christiana Trust was the lender in May 2015, BSI's demand letter substantially complied with the deed of trust's conditions precedent regarding preforeclosure notice. All of the material notice requirements were met and U.S. Bank was authorized to pursue judicial foreclosure in 2018. Accordingly, there is no issue of material fact as to whether U.S. Bank was entitled to foreclose, and it was entitled to summary judgment as a matter of law. We hold the trial court properly granted summary judgment to U.S. Bank.

## C. Attorney Fees on Appeal

Both parties request attorney fees and costs on appeal under RAP 18.1 and 14.2. Under RAP 18.1(a), a party may recover reasonable attorney fees or expenses on appeal if applicable law grants the party the right to recover these fees and expenses. RCW 4.84.330 provides that the prevailing party in a contract action is entitled to reasonable attorney fees and costs if the contract provides for attorney fees and costs. The deed of trust contained an attorney fee provision allowing the bank to recover fees. Because we affirm summary judgment in favor of U.S. Bank, we award reasonable attorney fees and costs to U.S. Bank with the amount to be determined by a commissioner of this court.

No. 53772-9-II

CONCLUSION

We affirm the trial court's order granting summary judgment to U.S. Bank and grant U.S. Bank's request for reasonable attorney fees and costs on appeal with the amount to be determined by a commissioner of this court.

_____
Glasgow, J

We concur:

_____
Lee, C.J.

_____
Worswick, J.

16